IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MONDIS TECHNOLOGY, LTD., <br> Plaintiff, <br><br> v. <br><br> LG ELECTRONICS, INC., ET AL, <br> Defendants | § § § § § § § § § § | CIVIL ACTION NO. 2:07-CV-565-TJW-CE |
| _____ | § § § § § § § § § § § § § | **Consolidated with:** |
| MONDIS TECHNOLOGY, LTD., <br> Plaintiff <br><br> v. <br><br> TOP VICTORY ELECTRONICS (TAIWAN) <br> CO. LTD., <br> Defendant | | CIVIL ACTION NO. 2:08-CV-478-TJW |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Compel Discovery. (Case No. 2:08-CV-478-TJW, Dkt. No. 150.) For the following reasons, the Court GRANTS-in-part and DENIES-in-part Defendants' Motion to Compel Discovery.

**I.    Background**

Mondis Technology, Ltd. ("Mondis") filed a complaint for patent infringement on December 31, 2007 against defendants LG Electronics Inc. and LG Electronics, USA, Inc. (collectively "LG"), Chimei InnoLux Corp. and InnoLux Corp. (collectively "InnoLux Corp."), and Hon Hai Precision Industry Co., Ltd. ("Hon Hai"). Mondis's claims against LG were dismissed due to settlement, so the only claims left are claims for patent infringement against InnoLux and Hon Hai. Mondis asserts ten patents in the case, and the patents are divided into

two families: (1) the '812 Patent family[1] and (2) the '090 Patent family.[2] The accused products are computer monitors and televisions made by Innolux and Hon Hai. Mondis filed a second complaint for patent infringement on December 23, 3008 against defendants Top Victory Electronics (Taiwan) Co. Ltd., TPV Int'l (USA), Inc., Envision Peripherals, Inc., Top Victory Electronics (Fujian) Co. Ltd., and TPV Electronics (Fujian) Co. Ltd. (collectively, "TPV"). Due to a prior license between TPV and Mondis's predecessor in interest, the only remaining claims against TPV are for TPV's television products, and the only asserted patents are from the '090 Patent family.

The two cases above were consolidated by this Court on April 21, 2011. (Case No. 2:07-CV-565-TJW-CE, Dkt. No. 379.) The motion to compel that is the subject of this Memorandum Opinion and Order, however, was filed by TPV, before the cases were consolidated, in Case No. 2:08-CV-478-TJW. (Case No. 2:08-CV-478-TJW, Dkt. No. 150.)

## II. Legal Standard

Rule 26(b)(1) governs the scope of discovery, providing that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" or "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The discovery rules are accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507 (1947)).

## III. Discussion

---

[1] The '812 Patent family includes U.S. Patent Nos. 6,057,812, 6,304,236, 6,639,588, and 6,686,895.
[2] The '090 Patent family includes U.S. Patent Nos. 6,247,090, 6,513,088, 6,549,970, 7,089,342, 7,475,180, and 7,475,181.

2

TPV filed a motion to compel on February 3, 2011 seeking to compel Mondis to produce three categories of documents. TPV describes the three categories as follows:

- Documents Mondis shared with potential inventors for the purpose of securing funding with respect to the acquisition of the patents-in-suit and the formation of Mondis.

- Documents related to a dispute between Mondis and Hitachi (which is the party who sold the patents to Mondis) regarding the sale of the patents-in-suit.

- Documents reflecting license negotiations related to the patents-in-suit where no license agreement was reached.

Each of the three categories is addressed below.

### A. Documents Mondis Shared with Potential Investors

Mondis is a limited liability company and its principal shareholder is Inpro Ltd. ("Inpro"). Inpro is an intellectual property holding company, and Michael Spiro is the director of both Mondis and Inpro. Through its subsidiary Mondis, Inpro licenses and enforces the patents-in-suit. Before Inpro acquired the patents-in-suit, it was the licensing agent for Hitachi, who was the then-owner of the patents-in-suit. During the time period of 2004-2007, Inpro sought investors to join the company and fund its efforts to license and litigate its various patent programs. Subject to nondisclosure agreements, Inpro provided a number of investment brokers and potential investors with slide presentations and other documents that contained disclosures of Inpro's licensing and litigation strategies and also estimates of licensing and litigation revenues. These spreadsheets and documents included the above information with respect to the patents-in-suit. Mondis argues that the information was developed in consultation with its parent company Inpro's counsel and contains information that was based on that counsel's legal advice and licensing and litigation strategy. A subset of these documents is the issue on this motion to

3

compel.  The parties dispute whether the documents are privileged and/or protected by the work product doctrine or whether the documents are discoverable.

Mondis argues the documents are covered under the work product protection because they were created in anticipation of litigation.  Alternatively, Mondis argues that the documents are covered by the attorney-client privilege and Mondis's (or Inpro's) disclosure to potential investors did not create a waiver because of the common interest doctrine.  TPV argues that the documents are not covered by the work product protection because that protection does not extend to materials created to assist in raising funds for litigation.  Additionally, TPV argues that there was no attorney-client privilege because the advice was for business advice and not legal advice and also because Mondis waived the privilege by disclosing the materials to potential investors.

The work product protection applies only to documents "prepared in anticipation of litigation."  Fed. R. Civ. P. 26(b)(3).  The Fifth Circuit has stated, however, that the protection "can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation was to aid in possible future litigation.'"  *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (citations omitted).  A party asserting work-product protection over particular materials must demonstrate: (1) the materials sought are tangible things; (2) the materials sought were prepared in anticipation of litigation or trial; (3) the materials were prepared by or for a party's representative.  *SEC v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2009).  In a recent case, Magistrate Judge Love found that a plaintiff's litigation strategy and licensing plan created prior to litigation could be covered under the work product protection because although the plaintiff was not in litigation at the time, it was clear that the primary purpose was future litigation.  *Fractus, S.A. v. Samsung Elecs. Co.*, Case No. 6:09-cv-203,

CM/ECF Dkt. No. 582 (E.D. Tex. Jan 20, 2011) (Love, J.). Finally, although the protection may be by disclosing the documents to third parties, "[d]isclosure of work-product waives the work-product protection only if work-product is given to adversaries or treated in a manner than substantially increases the likelihood that an adversary will come into possession of the material." *Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 400-01 (E.D. Tex. 2003) (Schell, J.).

The Court has reviewed, *in camera*, the documents that Mondis asserts the privilege and work product protection. The Court finds that the documents and slide presentations created for potential investors contain information and work product that were prepared in assistance with Inpro's counsel for the purpose of aiding future litigation. Although the documents may not have been prepared in connection with ongoing litigation, the documents were at a minimum created for possible future litigation. Some documents reveal Inpro's overall litigation and licensing strategy and others provide information—such as balance sheets including licensing and litigation revenues—that show the implementation of that strategy. All of the documents were prepared, however, with the intention of coordinating potential investors to aid in future possible litigation. The Court holds that these documents are protected by the work product protection. Furthermore, although these documents were disclosed to third parties, the disclosures do not create a waiver because they were disclosed subject to non disclosure agreements and thus did not substantially increase the likelihood that an adversary would come into possession of the materials. Because the Court holds that the documents are protected by the work product protection, the Court need not reach the issue of attorney-client privilege. TPV's motion to compel is DENIED with respect to the abovementioned documents.

  **B.**  **Documents Related to Communications Between Mondis and Hitachi**

Mondis and Hitachi had been parties in negotiating the sale of patents from Hitachi to Mondis. In February of 2008, shortly before Mondis was to pay the money to buy the patents, Mondis and Hitachi allegedly held a meeting to discuss the value of the patents that were for sale (which included a group of patents that included the patents-in-suit). The German patent office had invalidated a German patent that was part of the patent sale (the sale involved a large group of patents including the patents-in-suit plus other patents such as the German patent). TPV states that Mondis and Hitachi clashed over the value of the patents, but Mondis disagrees regarding the extent of the dispute, if any, between it and Hitachi. TPV seeks to compel Mondis to disclose communications regarding Mondis's dispute with Hitachi regarding the value of the patent sale. In addition, TPV requests the court to compel Mondis to provide a witness to testify regarding the dispute. Mondis argues the communications are protected by the common legal interest between Hitachi and Mondis. Mondis further argues that TPV is merely seeking to discover this information, in violation of this Court's protective order, to use in Germany—where the parties are involved in German patent litigation regarding the German patents. TPV argues that Mondis and Hitachi could not have had a common legal interest because they were adverse, that is, they were in a dispute.

The attorney-client privilege applies only to communications made in the context of an attorney-client relationship "for the primary purpose of securing either a legal opinion or legal services." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997). Although disclosure to a third-party normally waives the privilege, the privileged communication is not waived, however, if it is shared with a third person who has a common legal interest with respect to the subject matter of the communication. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 711 (5th Cir. 2001). The common legal interest doctrine is usually only applied as to co-parties in actual

litigation and their counsel or potential co-parties and their counsel. *See id.* at 710. In addition, the privilege is generally narrowly construed because it is an obstacle to truthseeking. *Id.* Even the cases Mondis cites do not support Mondis's position. Mondis cites to *Rembrandt Techs., L.P. v. Harris Corp.*, No. 07C-09-059, 2009 WL 402332 (Del. Super., Feb. 12, 2009), but even the *Rembrandt* Court held that parties are only covered under the common interest doctrine if they share a common enterprise and the legal advice relates to the goal of that enterprise. *Id.* at *7. The court observed that "any communications in which the parties' are negotiating their rights and relationships to each other are not to be protected, as the parties' interests would have been adverse rather than common." *Id.* at *7, n.73.

Under the standard above, Mondis and Hitachi did not have a common legal interest when they were negotiating the value of the patents in the sale with respect to the effect of the German patent office invalidating one of the patents. The Court has performed an *in camera* review of the documents and the Court finds that when discussing the effect of the German patent office decision, the parties were negotiating their rights and relationships with each other, which is not covered by the common interest doctrine. Such negotiation and adverse positions are particularly apparent in Mondis's document production numbers 600, 1242, 811, 4970, 34644, and 3361. (*See* Mondis's documents produced for *in camera* review in Binder 2.) Although Mondis correctly argues it had a common legal interest with Hitachi that the patents remain valid, the core of the communications was not the validity of the patents but instead a negotiation for a potential adjustment to the contract price of the patent sale because of the invalidated patent by the German patent office. In that regard, Mondis and Hitachi did not have a common legal interest; rather, their interests were directly adverse. Therefore, the Court compels Mondis to produce to TPV the documents contained in Binder 2 that Mondis produced

7

for *in camera* review.

The Court observes, however, that although communications related to the German patent office decision between Mondis and Hitachi are not covered by the attorney-client privilege via the common interest doctrine, Mondis's *internal* communications and work product contained in Binder 2 may potentially be covered by the attorney-client privilege or work product protection. There are mental impressions and notes by Mondis agents contained in the documents produced for *in camera* review in Binder 2, and it is not clear to this Court whether the documents contained the additional mental impressions and notes when communicated between Mondis and Hitachi. For example, Mondis's document production number 3361 in Binder 2 is a letter attached to an email from Hitachi to Mr. Spiro. The letter text itself is not privileged via the common interest doctrine; however, the printed letter, as produced to this Court, contains handwritten notes in the margins that appear to be written by Mr. Spiro and may potentially be covered by the work product protection.[3] Thus, there may be portions of the documents produced in Binder 2 that are covered by the work product protection. Therefore, the Court Orders Mondis to produce *in camera* to the Court a new Binder 2 that has redactions for Mondis's individual work product protection and/or attorney-client privilege.[4] Along with the

---

[3] The context of the handwritten notes in the margin is not clear to this Court. If the email, for example, was printed out by Mr. Spiro and then Mr. Spiro took notes in the margins that summarize Mr. Spiro's thoughts on Hitachi's position in the email, then that may be covered by the work product protection (assuming the other requirements of the work product protection are satisfied). If, however, Mr. Spiro then sent a copy of that email, including the handwritten notes, back to Hitachi (which is not likely given the content of the handwritten notes), then it would not be covered because the protection would be waived.

[4] These redactions should be consistent with this Memorandum Opinion and Order. Therefore, any communications between Mondis and Hitachi regarding the German patent office decision should not be redacted as that information will be produced because Mondis and Hitachi did not have a common interest with respect to the German patent office decision. Furthermore, even if the document contained Mondis's internal attorney-client privileged communications or work product, the document should not be redacted at all if it was later communicated to Hitachi

new Binder 2, Mondis should provide the Court with a memorandum or declaration providing a short basis for each proposed redaction or set of redactions.  This information is due to the Court by the close of business on Monday, May 9, 2011.  After receiving the new redacted Binder 2, the Court will review the redactions and then order Mondis to produce to TPV an identical binder with the documents including redactions that the Court finds appropriate.

Finally, Mondis points out that Mondis and TPV are currently engaged in a quasi-parallel patent litigation proceeding in Germany over German counterparts to the patents-in-suit in this case.  Mondis is concerned that TPV is merely seeking this discovery to use in the German litigation.  Rather than prying into TPV's intentions, the Court only states that this information is covered by this Court's protective order, and this Court approaches violations of its orders seriously—particularly discovery orders.  *See Green v. Blitz*, Case No. 2:07-CV-372-TJW, 2011 WL 806011 (E.D. Tex. Mar. 1, 2011) (Ward, J.) (finding that a party violated a discovery order and issuing a civil sanction of $250,000.00, a purging sanction of $500,000.00, and a sanction requiring the party to file a copy of that Memorandum Opinion and Order with its complaint or answer in every case in which it participates for a period of five years after the date of the order).

TPV's motion to compel is therefore GRANTED with respect to the aforementioned communications between Mondis and Hitachi.

### C. Mondis's Communications with Unlicensed Third Parties Regarding the Value of Potential Licenses

TPV has requested communications from Mondis regarding any license or agreement regarding the patents-in-suit.  Mondis objects to any discovery related to communications that

---

because that would result in a waiver of the privilege or work product protection (unless, for work product protection only, that communication was made pursuant to a non disclosure agreement).

have not yet resulted in a license or other agreement for rights in the patents-in-suit. Mondis argues that such disclosure would cause severe prejudice and a chilling effect on the negotiations in that case and that the documents would be minimally relevant. TPV argues that such documents are discoverable given that licensing negotiations are particularly relevant in light of the recent Federal Circuit decision of *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010).

TPV cites *ResQNet.com* and this Court's previous Order in *Tyco Healthcare Group LP v. E-Z-EM, Inc.*, 2:07-CV-262, 2010 WL 774878 (E.D. Tex. Mar. 2, 2010) (Ward, J.). This Court stated in *Tyco* that "*ResQNet* suggests that the underlying negotiations are relevant to the calculation of a reasonable royalty using the hypothetical negotiation damages model." *Tyco*, 2010 WL 774878, at *2. Mondis, on the other hand, cites a number of district court cases outside the Fifth Circuit that have not allowed discovery of ongoing or unconsummated settlement negotiations because such production would "chill the confidentiality that parties rely on during their settlement negotiations and, in turn, obstruct settlement." *See, e.g.*, *Bergstrom, Inc. v. Glacier Bay, Inc.*, No. 08-50078, 2010 WL 257253, at *2 (N.D. Ill. Jan 22, 2010).

This Court holds that Mondis's ongoing or unconsummated settlement and licensing negotiations with the patents-in-suit are not discoverable. It was this Court's bright-line rule before *ResQNet.com* that settlement negotiations are privileged but the resulting license agreement is discoverable. *See Tyco*, 2010 WL 774878, at *2. In *Tyco*, as a result of *ResQNet.com*, this Court relaxed its approach to allow discovery of the underlying settlement negotiations of license agreements. However, it is one thing to allow discovery of settlement negotiations, as this Court did in *Tyco*, where the negotiations ultimately resulted in a license, but it is another thing to allow discovery of settlement or licensing negotiations where a license has

not yet been adopted. The Court refuses to allow discovery to go that far for two reasons. First, unconsummated settlement negotiation communications are not as reliable because without knowing the ultimate decision (i.e., the agreement or license), the communications have less context and therefore less probative value. For example, one party in the negotiation may be puffing by making certain communications. Additionally, the concern of a chilling effect on settlement negotiations is potentially even greater when the settlement negotiations are still in progress. Therefore, the Court DENIES TPV's motion to compel discovery of Mondis's ongoing or unconsummated settlement and licensing negotiations with the patents-in-suit.

## IV. Conclusion

The Court GRANTS-in-part and DENIES-in-part TPV's Motion to Compel Discovery. (Dkt. No. 150.) The Court DENIES TPV's motion to compel discovery of Mondis's documents shared with potential investors and Mondis's ongoing or unconsummated settlement and licensing negotiations with the patents-in-suit. The Court GRANTS TPV's motion to compel documents related to communications between Mondis and Hitachi. The Court further Orders Mondis to produce *in camera* to the Court a new Binder 2 that has redactions for Mondis's individual work product protection and/or attorney-client privilege. Along with the new Binder 2, Mondis should provide the Court with a memorandum or declaration providing a short basis for each proposed redaction or set of redactions. This information is due to the Court by the close of business on Monday, May 9, 2011.

It is so ORDERED.

SIGNED this 4th day of May, 2011.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE