# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| MONDIS TECHNOLOGY, LTD., <br> Plaintiff, <br><br> v. <br><br> LG ELECTRONICS, INC., ET AL, <br> Defendants. | § § § § § § § § § § | CIVIL ACTION NO. 2:07-CV-565-TJW-CE |
| | § § | **Consolidated with:** |
| MONDIS TECHNOLOGY, LTD., <br> Plaintiff, <br><br> v. <br><br> TOP VICTORY ELECTRONICS (TAIWAN) CO. LTD., <br> Defendant. | § § § § § § § § § § | CIVIL ACTION NO. 2:08-CV-478-TJW |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Chimei-InnoLux Corp.'s and InnoLux Corp.'s (collectively "InnoLux" or "Defendant") Motion to Compel that was filed post-trial in this case. (Dkt. No. 579.) Mondis Technology, Ltd.'s ("Mondis" or "Plaintiff) opposes the motion. The Court has carefully considered the parties' arguments in the briefing and this Court has also conducted a hearing. For the following reasons the Court DENIES InnoLux's motion.

**I.     Background**

This motion to compel arises because Plaintiff's expert, Mr. Lamm, allegedly did not produce certain data to InnoLux that he had downloaded from a "test" he ran on InnoLux's prior art Sony DDM Monitor. For the most part, the underlying facts regarding Mr. Lamm's "test" of the Sony DDM Monitor and Mr. Lamm's failure to produce that information are undisputed in

1

the motion. Rather, the parties dispute whether Mr. Lamm should now be required to disclose the test data.

The procedural posture of this motion is unusual. As will be discussed below, InnoLux clearly knew that Mr. Lamm ran the test on the prior art monitor. InnoLux's motion, however, implies that it first learned that Mondis might not have produced discoverable information following the closing arguments in this case—due to a conversation between Mr. Webb (InnoLux's witness) and Mr. Lamm (Mondis's expert witness). More specifically, the context of the alleged conversation after closing arguments is that Mr. Lamm and Mr. Webb, who are apparently acquaintances due to their work in the monitor industry, were "catching up" after closing arguments. (Webb. Decl., Dkt. No. 579-1, at 1.) Mr. Webb's brief declaration, which recounts the conversation, states as follows:

> 3. In passing I asked Mr. Lamm what program he had used to download the memory from the Sony DDM monitor (the "DDM") that he had previously inspected at Cooley LLP's Broomfield office. No one requested or instructed that I ask Mr. Lamm this question.
>
> 4. Mr. Lamm indicated that he used a program he had developed at his former company Tech Source, in Florida, to access the EEPROM in the DDM.
>
> 5. I told Mr. Lamm that I had asked David Eccles and David Lesh if they had a road map of the contents for the EEPROM memory in the DDM, and that although neither Mr. Eccles nor Mr. Lesh could provide such a map, they did tell me that the 2800 model number of the DDM and the C or M (i.e., color or monochrome) type code should be there.
>
> 6. I asked Mr. Lamm if had [sic] found this model number and/or type code in the memory of the DDM that he inspected.
>
> 7. Mr. Lamm said that the downloaded information was displayed all in hex format and he did not recognize 2800 C or M, but that he did recognize the pattern for a serial number in the downloaded information.

(*Id.* at 1.) InnoLux, therefore, asks the Court to compel Mr. Lamm to disclose the data he downloaded from the Sony DDM Monitor. InnoLux argues that the Court's Discovery Order

(Dkt. No. 80) and Federal Rule of Civil Procedure 26 require Plaintiff to disclose the data to InnoLux. Furthermore, whether the Sony DDM Monitor stored a serial number in its memory is a highly relevant question with respect to InnoLux's invalidity case. As a result, InnoLux argues it was severely prejudiced if Mr. Lamm was withholding this information that potentially shows that the Sony DDM Monitor stores a serial number in the memory.

Plaintiff responds with several arguments and also adds some additional background. With respect to Mr. Lamm's data itself, Plaintiff argues that it is not discoverable because it is exempted from discovery under the protective order in this case. Plaintiff states that Mr. Lamm did not rely on the data. Further, to the extent InnoLux is seeking Mr. Lamm's communications with Mondis's counsel about the inspection, Mondis argues that would be exempted from discovery under Federal Rule of Civil Procedure 26.

As Plaintiff explains, the circumstances surrounding Mr. Lamm's inspection show that InnoLux is also to blame and that InnoLux was not prejudiced. To illustrate, in February of 2011, InnoLux had informed Plaintiff that it had acquired the Sony DDM Monitor and it planned to use it in support of its invalidity case. As a result, Mondis informed InnoLux that Mr. Lamm (Mondis's expert) needed to inspect the monitor. On March 29, 2011, Mr. Lamm inspected the Sony DDM Monitor at the offices of InnoLux's counsel. At the inspection, InnoLux had its counsel and Mr. Webb present in-person and also InnoLux's expert, Dr. Rhyne, by telephone. InnoLux does not dispute that InnoLux's counsel, Mr. Webb, and Dr. Rhyne (by telephone) all observed Mr. Lamm plug a cable from his laptop computer to the Sony DDM Monitor and run a software program. Nevertheless, despite InnoLux preparing for trial over the following months, taking depositions of Mr. Lamm, and confronting Mr. Lamm at trial, InnoLux never brought up Mr. Lamm's test on the Sony DDM Monitor that he never disclosed to InnoLux. Rather, it was

not until after evidence closed at the trial, that InnoLux's consultant witness, Mr. Webb, "[i]n passing" asked Mr. Lamm about the test, and Mr. Webb states that allegedly "[n]o one requested or instructed that I ask Mr. Lamm this question." (Webb Decl., Dkt. No. 579-1, at 1.)

In addition, Plaintiff states that Mr. Webb, though not an expert, also ran a program on the Sony DDM Monitor and InnoLux never gave Plaintiff that data. Therefore, Plaintiff says that InnoLux withheld the same type of information that Plaintiff did. The difference, however, is that Mr. Webb was not an expert witness so he was not under the same requirements as Plaintiff's expert. In any event, Plaintiff argues this shows that InnoLux understood the disclosure requirements just as Plaintiff did—neither disclosed the data from the software programs they ran on the Sony DDM Monitor.

## II. Legal Standard

The Court may grant a new trial under Federal Rule of Civil Procedure 59. One reason a new trial may be granted is because of "newly discovered evidence." *Diaz v. Methodist Hosp.*, 46 F.3d 492, 495 (5th Cir. 1995). Although the "newly discovered evidence" rule is codified in Federal Rule of Civil Procedure 60(b), the Fifth Circuit also applies the rule for motions for a new trial filed under Federal Rule of Civil Procedure 59. *See id.* "In deciding whether newly discovered evidence is sufficient to warrant a new trial, the district court should consider whether the evidence: (1) would probably have changed the outcome of the trial; (2) could have been discovered earlier with due diligence; and (3) is merely cumulative or impeaching. *Id.* It is InnoLux's burden in this case to "demonstrate that the new evidence clearly weighs in favor of a new trial." *Id.*

## III. Discussion

The Court views the issue before the Court as a matter of newly discovered evidence. Although InnoLux has brought its motion styled as a motion to compel, if the Court were to grant the motion and InnoLux's predictions of the evidence are correct, then the only potential remedy for InnoLux, absent sanctions,[1] would be a new trial. In accordance, because this Court would not grant a motion for a new trial based on the "newly discovered evidence" in this case, granting the motion to compel would be futile and would only increase the burden on the parties and this Court.

It is clear to the Court that InnoLux did not exercise diligence in discovering the content of Mr. Lamm's "test." Had InnoLux exercised diligence, it would have discovered the evidence. To illustrate, Defendant InnoLux knew about Mr. Lamm running the tests on the Sony DDM Monitor in March of 2011. This is clear because Mr. Lamm ran the tests in the presence of InnoLux's counsel, Mr. Webb, and InnoLux's expert Dr. Rhyne (via telephone). Nevertheless, InnoLux never asked Mr. Lamm or Mondis about the tests—neither in Mr. Lamm's deposition or in trial. This is particularly hard to imagine considering that the Sony DDM Monitor's memory, and what was stored in it, was such a key point in this case for InnoLux's invalidity defense. Also, since neither InnoLux nor its consultants or experts could determine how to map the contents for the "user" EEPROM area, (*see* InnoLux's Reply Br., Dkt. no. 632, at 4.), it seems

---

[1] And the Court refuses to award sanctions for several reasons. Most importantly, InnoLux also did not disclose the same type of tests and information to Mondis. InnoLux does not deny this in its Reply Brief. (*See* Dkt. No. 632, at 1 n.1.) Thus, although the parties may have been mistaken that they were not required to turn over these types of tests, the parties apparently both believed that they were not required to turn them over. And it does not excuse Defendant for not disclosing the tests it ran merely because Mr. Webb was not an expert. This is because Federal Rule of Civil Procedure 26(a)(1) requires Defendant to disclose "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Further, Defendant's expert, Dr. Rhyne, by relying on conversations he had with Mr. Webb, likely at least indirectly relied on the tests Mr. Webb ran on the Sony DDM Monitor, which would also make them discoverable.

5

InnoLux should have been extremely interested in what Mr. Lamm found from his tests of the Sony DDM Monitor. But despite the obvious high motive for Defendant to inquire about Mr. Lamm's data, Defendant never asked until Mr. Webb (supposedly on his own) happened to ask Mr. Lamm after closing arguments in this case. Counsel for InnoLux even admitted at the hearing that in hindsight he should have asked Mr. Lamm about it in his deposition.

Although it is likely Mr. Lamm's test data would have been relevant and that the Court would have likely compelled Mondis to turn over Mr. Lamm's test data if the Court had been asked before trial, this case is in a different procedural posture now. At this point, in order to grant a new trial based on this newly discovered evidence, Defendant InnoLux must prove it could not have discovered the evidence with reasonable diligence. And InnoLux has not met that burden.

## IV. Conclusion

In conclusion, because InnoLux has shown it exercised reasonable diligence, it would be futile for the Court to grant InnoLux's motion to compel because the Court would grant InnoLux no further relief in this case. InnoLux's motion to compel (Dkt. No 579) is DENIED.

It is so ORDERED.

SIGNED this 18th day of August, 2011.

_T. John Ward_
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

6