IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MONDIS TECHNOLOGY, LTD., <br>     Plaintiff, <br><br> v. <br><br> LG ELECTRONICS, INC., ET AL, <br>     Defendants. | § § § § § § § § § | CIVIL ACTION NO. 2:07-CV-565-TJW-CE |
| ———————————————— | § § § | **Consolidated with:** |
| MONDIS TECHNOLOGY, LTD., <br>     Plaintiff, <br><br> v. <br><br> TOP VICTORY ELECTRONICS (TAIWAN) CO. LTD., <br>     Defendant. | § § § § § § § § § § | CIVIL ACTION NO. 2:08-CV-478-TJW |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Pending before the Court are the parties' various motions for judgment as a matter of law ("JMOL"). For the reasons discussed in this Memorandum Opinion and Order, the Court makes the following rulings: the Court DENIES InnoLux's motion for JMOL of invalidity (Dkt. No. 620), DENIES InnoLux's motion for JMOL of non-infringement (Dkt. No. 622), GRANTS Mondis's motion for JMOL that all asserted claims are infringed (Dkt. No. 619), GRANTS-in-part and DENIES-in-part Mondis's motion for JMOL or a new trial with respect to claim 25 of the '088 Patent (Dkt. No. 623), GRANTS InnoLux's motion for JMOL of no willful infringement, and DENIES Mondis's motion for JMOL or a new trial with respect to the HP-Hitachi license agreement (Dkt. No. 618).

## II. FACTUAL AND PROCEDURAL BACKGROUND

On June 13, 2011, the parties picked a jury in this case. Plaintiff Mondis Technology, Ltd. ("Mondis") claimed that Chimei-InnoLux Corp. and InnoLux Corp. (collectively "InnoLux" or "Defendant") infringed several patents that Mondis owns. InnoLux's accused products were monitors and televisions that it makes, uses, sells, offers to sell, and/or imports. InnoLux denied that it infringed the patents-in-suit, and InnoLux further claimed that the patents-in-suit were invalid and that many of InnoLux's accused products were already licensed. On June 27, 2011, the jury returned a verdict. (*See* Jury Verdict, Dkt. No. 586.) The jury found the following claims valid and infringed: claim 15 of U.S. Patent No. 6,247,090 (the '090 Patent), claim 15 of U.S. Patent No. 7,089,342 (the '342 Patent), claims 14 and 23 of U.S. Patent No. 7,475,180 (the '180 Patent), claims 1 and 11 of U.S. Patent No. 6,057,812 (the '812 Patent), and claim 1 of U.S. Patent No. 6,639,588 (the '588 Patent). The jury found the following claims invalid and also not infringed: claims 3 and 20 of the '090 Patent, claims 9 and 25 of U.S. Patent No. 6,513,088 (the '088 Patent), and claim 18 of U.S. Patent No. 6,549,970 (the '970 Patent).[1] The jury found that InnoLux's accused products that it sold to the Hewlett-Packard Company ("HP") were covered under a license between HP and Hitachi (who was Mondis's predecessor-in-interest to the patents-in-suit). The jury also found that InnoLux's infringement of the '090 Patent, '342 Patent, and the '180 Patent was willful. The jury found the amount of damages to be $15,000,000.00.

## III. LEGAL STANDARD

JMOL may be granted only if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue." Fed. R. Civ. P. 50(a)(1).

---

[1] The jury also found that claim 22 of the '088 Patent was invalid. That claim, however, was not asserted in this case. Instead, without objection of either party, the claim inadvertently appeared on the verdict form. As a result, the Court strikes the jury's finding that claim 22 of the '088 Patent is invalid.

2

A motion for JMOL is a procedural issue not unique to patent law; thus, such motions are reviewed under the law of the regional circuit. *Summit Tech., Inc. v. Nidek Co.,* 363 F.3d 1219, 1223 (Fed. Cir. 2004). In the Fifth Circuit, JMOL may not be granted unless "there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Hiltgen v. Sumrall*, 47 F.3d 695, 700 (5th Cir. 1995) (internal citation omitted). The court reviews all the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party; however, a court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

InnoLux and Mondis both approached the Court regarding their intention to file their JMOLs during the trial. (*See, e.g.*, 6/23 a.m. Tr., Dkt. No. 607, 93-95.) Based on an agreement between the parties, the Court instructed the parties both times that they were to file their JMOLs in writing after trial and they would be deemed timely. (*See id.*) The Court allowed this because in order to preserve the right to file a post-trial Rule 50(b) motion, the moving party must first request a Rule 50(a) JMOL before the case is submitted to the jury. *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 471 (5th Cir. 2000). As a practical matter, however, these particular JMOLs were filed after the jury verdict was reached and the parties both make arguments with respect to the jury verdict. But in Rule 50(a) JMOLs, the jury verdict is irrelevant because technically the motion must be filed "before the case is submitted to the jury." *See* Fed. R. Civ. P. 50(a)(2).[2] As a result, the Court will do two things: (1) deem the parties' JMOLs as timely filed under Rule 50(a) and the parties' record is preserved; and (2) the Court will review the

---

[2] The Court agrees with Mondis that even in a Rule 50(b) JMOL the jury verdict is technically not relevant because a party cannot assert a ground in a renewed Rule 50(b) JMOL that the party did not assert in a Rule 50(a) JMOL. However, practically, the jury verdict is considered in a Rule 50(b) motion in the sense that a party need not move for JMOL on an issue the jury found in their favor.

3

JMOLs as if they were filed under Rule 50(b) because, in reality, the motions were filed after the jury verdict.

In addition, "[t]he court may . . . grant a new trial . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a). In considering a motion for a new trial, the Federal Circuit applies the law of the regional circuit—the Fifth Circuit in this case. *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1347 (Fed. Cir. 2007). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded were excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.3d 610, 613 (5th Cir. 1985). "The decision to grant or deny a motion for a new trial is within the discretion of the trial court and will not be disturbed absent an abuse of discretion or a misapprehension of the law." *Prytania Park Hotel, Ltd. v. General Star Indem. Co.*, 179 F.3d 169, 173 (5th Cir. 1999).

**IV. DISCUSSION**

    *A.    InnoLux's Motion for JMOL of Invalidity (Dkt. No. 620.)*

The Court DENIES InnoLux's motion for JMOL of invalidity of all claims that the jury did not find invalid. For primarily the three reasons discussed below, there was sufficient evidence for a reasonable jury to find the following claims were valid: claim 15 of the '090 Patent, claim 15 the '342 Patent, claims 14 and 23 of the '180 Patent, claims 1 and 11 of the '812 Patent, and claim 1 of the '588 Patent.[3]

---

[3] Although Mondis does not challenge the jury's findings of invalidity with respect to claims it found invalid (except for claim 25 of the '088 Patent), the Court holds that those findings are supported by legally sufficient evidence and the Court will soon be entering a judgment of invalidity on those claims. This legally sufficient evidentiary basis is relevant in the Court's analysis of InnoLux's motion for JMOLs of invalidity and no willful infringement. That is, because the jury had a legally sufficient evidentiary basis to find invalidity for the claims that the

4

### 1. Credibility of InnoLux's Witnesses

It is InnoLux's burden to prove invalidity by clear and convincing evidence. Although it appears the jury accepted InnoLux's witnesses' testimony as to several of the claims that the jury found to be invalid, the jury had a legally sufficient basis to reject (or at least give less credit to) other portions of their testimony. InnoLux's expert witness, Dr. Rhyne, was hired and paid by InnoLux, and additionally, there was sufficient evidence for a jury to find that Dr. Rhyne lacked the amount of expertise in the monitor industry as, for example, Mondis's expert Mr. Lamm. Many of InnoLux's other witnesses who provided testimony that was technical in nature, such as Messrs. Webb, Eccles, Malden, and Lesh, were all paid consultants by InnoLux. Furthermore, much of the testimony provided by Messrs. Webb, Eccles, Malden, and Lesh was based on their memory of events that occurred approximately twenty years before they gave their testimony at trial. As a result, a reasonably jury may not have accepted certain portions of these witnesses testimony due to the witnesses' financial interest in the case and/or their flawed memories.

### 2. Whether Certain References or Activities Were Prior Art

The jury had legally sufficient evidence to reject the Sony DDM Monitor, Webb Development Activities,[4] and Draft 5.05 of the VESA Display Definition Protocol ("VDDP") as prior art. Though it is likely the jury accepted one or more of these as prior art given that the jury found some claims invalid, the jury had legally sufficient evidence to reject any of these three references/activities as prior art.[5]

---

jury found invalid, the Court can focus its analysis in this JMOL of invalidity on the differences between the claims the jury found invalid and those that the jury found valid.

[4] The parties also call the "Webb Development Activities" the "Webb monitors."

[5] Neither party asked for a jury question regarding whether certain references or activities were prior art, so the Court cannot be certain which references the jury found were prior art and which, if any, the jury did not find to be prior art. However, both the Federal Circuit and the Fifth Circuit allow for general verdicts, and where they are used, the jury is presumed to have made the necessary underlying factual determinations. *See, e.g., Agrizap, Inc. v. Woodstream*

There was legally sufficient evidence for a reasonable jury to determine that the Draft 5.05 of the VDDP was not prior art because it was not public. VDDP had confidentiality markings on it. In addition, to access the document, a member of the public would have either had to join VESA (either individually or through an employer), be a member of VESA, or attend a VESA monitor committee meeting and request a copy of VDDP at the meeting. (*See* Dkt. No. 620, at 12-13.) Thus, a reasonable jury may have found the VDDP to not be prior art.

With respect to the Sony DDM Monitor and the Webb Development Activities, the majority of InnoLux's evidence that attempted to establish these as prior art was in the form of the witness testimony of Messrs. Webb, Eccles, Malden, and Lesh. As stated above, the jury may not have accepted all or parts of these witnesses testimony due to potential flaws in their memories over a period of twenty years or because these witnesses were paid consultants by InnoLux. In particular, with respect to the Webb Development Activities, there was little corroboration in the form of invoices or other documents to support Mr. Webb's testimony that the "Webb Monitors" were made, used, or sold in the manner Mr. Webb testified. Furthermore, although Mondis spent several pages (in its Response Brief to InnoLux's JMOL of Invalidity, Dkt. No. 638) explaining why the Webb Development Activities and Sony DDM Monitor were not prior art, in InnoLux's Reply Brief (Dkt. No. 645), InnoLux never argues why the Webb Development Activities should be prior art and only addresses the Sony DDM Monitor in a two sentence footnote. But it is InnoLux's burden to prove by clear and convincing evidence that the references or activities it asserts are actually prior art.

---

*Corp.*, 520 F.3d 1337, 1343 (Fed. Cir. 2008) ("[E]ven when the jury is given an essentially black box verdict form . . . we presume all factual disputes were resolved in favor of the verdict.") (citation omitted); *Control Components, Inc. v. Valtek, Inc.*, 609 F.2d 763, 767 (5th Cir. 1980) (holding that where "jury findings on the factual underpinnings were implicit in the general verdict . . . we will presume that the disputed matters of fact have been resolved favorably to the prevailing party in accordance with the trial judge's instructions") (citations and internal quotation omitted).

Therefore, the jury had legally sufficient evidence to reject the Sony DDM Monitor, Webb Development Activities, and/or Draft 5.05 of the VESA Display Definition Protocol ("VDDP") as being prior art.

> 3. *Sufficient Evidence to Support Validity for the Specific Claims at Issue*

Even assuming the jury found that the Sony DDM Monitor and the Webb Development Activities were prior art, there was a legally sufficient evidentiary basis for the jury to find claim 15 of the '090 Patent, claim 15 the '342 Patent, claims 14 and 23 of the '180 Patent, claims 1 and 11 of the '812 Patent, and claim 1 of the '588 Patent all to be valid.

With respect to claim 15 of the '090 Patent, among other reasons, there was legally sufficient evidence for a reasonable jury to find that the claim was not obvious or anticipated because of the limitation that "the display unit [be] capable or receiving control instructions from the video source to adjust the displayed image." '090 Patent, Ex Parte Reexamination Certificate, 2:4-6. Insofar as claim 15 of the '342 Patent, there was legally sufficient evidence for a reasonable jury to find that the claim was not obvious or anticipated because it included the limitation that "the display unit information which is stored in the memory further includes information other than the identification number." '342 Patent, 12:23-25. There was legally sufficient evidence for a reasonable jury to find that claim 14 of the '180 Patent was not anticipated or obvious because it included the limitations of "a memory in which at least display unit information is stored, said display unit information including an identification number for identifying at least a type of said display unit and characteristic information of said display unit." '180 Patent, 11:46-50. Finally, there was legally sufficient evidence for a reasonable jury to find that claim 23 of the '180 Patent was not obvious or anticipated for at least the same reason as claim 14 of the '180 Patent (i.e., the identification number for identifying a type of display unit).

7

For these four claims mentioned in the previous paragraph, the support that InnoLux provided that the prior art teaches or renders obvious the abovementioned limitations consisted mainly of testimony by Dr. Rhyne and testimony by Messrs. Webb, Eccles, Malden, and Lesh. As described above, the jury may not have completely accepted that testimony due to the witnesses' financial interest and flawed memories. In addition, a reasonable jury may have accepted Plaintiff's expert Mr. Lamm's testimony with respect to those claims and limitations. (*See, e.g.*, 6/22 A.M. Tr., Dkt. No. 607, at 46-52 (discussing the missing pieces in the Webb Development Activities); *id.* at 52-60 (discussing why the Sony DDM Monitor does not anticipate); *id.* at 61-62 (discussing the missing pieces from the Sawdon reference).)

The remaining three claims in dispute come from what the parties have referred to as the '812 Patent family. The Court holds that there was likewise a sufficient evidentiary basis for the jury to conclude that claims 1 and 11 from the '812 Patent were valid and that claim 1 from the '588 Patent was valid. It was InnoLux's burden by clear and convincing evidence to prove the claims in the '812 Patent family were invalid, and the fact that Mondis presented little evidence to rebut InnoLux's invalidity arguments does not change InnoLux's burden. InnoLux overstates the importance of the testimony of the named inventor of the '812 Patent family—Ikuya Arai. Mr. Arai only testified regarding what portions of the *figures* in the '812 Patent family were known, but the relevant question would be what portions of the *claims* in the '812 Patent family were known. (*See, e.g.*, 6/21 P.M. Tr., Dkt. No. 607, at 112-119.) Further, Mr. Arai testified that not all portions of those figures were known in the prior art. (*Id.*) In addition, in InnoLux's JMOL of invalidity, with respect to the '812 Patent family, InnoLux only moves for JMOL considering the Takahashi reference in combination with the Webb Development Activities.[6] A

---

[6] At trial, Dr. Rhyne discussed invalidity of the '812 Patent family with respect to the Takahashi reference, the Webb Development Activities, and additionally the Sony DDM Monitor. But in

reasonable jury particularly could have rejected the use of the Webb Development Activities as prior art given that the evidence of the Webb Development Activities was supported almost solely by Mr. Webb's testimony (which the jury may have chosen to reject in whole or in part due to Mr. Webb's financial interest in the case and the potential memory flaws).

Therefore, there was sufficient evidence for a reasonable jury to find the following claims were valid: claim 15 of the '090 Patent, claim 15 the '342 Patent, claims 14 and 23 of the '180 Patent, claims 1 and 11 of the '812 Patent, and claim 1 of the '588 Patent. The Court DENIES InnoLux's motion for JMOL of invalidity.

### B. InnoLux's Motion for JMOL of Non-Infringement (Dkt. No. 622.)

The Court DENIES InnoLux's motion for JMOL of non-infringement. (Dkt. No. 622.) The Court holds that there was legally sufficient evidence for a reasonable jury to find the following claims (the "Infringed Claims-at-Issue" in this motion) infringed: claim 15 of the '090 Patent, claim 15 the '342 Patent, claims 14 and 23 of the '180 Patent, claims 1 and 11 of the '812 Patent, and claim 1 of the '588 Patent.[7]

InnoLux's primary argument is that Mondis failed to present evidence of direct infringement because Mondis did not show that the functional limitations of certain claims were actually performed; rather, Mondis presented only evidence that the limitations were "capable" of being performed. For example, claim 3 of the '090 Patent (from which claim 15 depends) requires the limitation that the "said communication controller *communicates* the display unit

---

InnoLux's JMOL, in the section where InnoLux argues it is entitled to JMOL of invalidity with respect to the '812 Patent family (*see* Dkt. No. 620, §§ III(B)(1) & III(B)(2), at 10-12), InnoLux does not raise the issue of the Sony DDM Monitor with respect to the '812 Patent family. As a result, the Court need not consider the Sony DDM Monitor. Nevertheless, the Court observes that even if it did consider the Sony DDM Monitor, the jury had sufficient evidence to reject Dr. Rhyne's obviousness opinion with respect to the Sony DDM Monitor and the '812 Patent family.
[7] The Court rejects InnoLux's argument that InnoLux is entitled to JMOL on the '236, '895, and '181 Patents because InnoLux's declaratory judgment claim for non-infringement of those patents was not tried before the jury.

information." '090 Patent, 12:1-2. As a result, InnoLux argues that Mondis must prove that the display unit information has actually been communicated to show direct infringement, and Mondis argues that the display unit information need only be "capable" of being communicated. The Court agrees with InnoLux on this legal issue. In *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010), the Federal Circuit stated that "[u]nless the claim language only requires the capacity to perform a particular claim element, we have held that it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement." Likewise, Mondis must prove in this case, for example, that the display unit information has specifically been communicated by the communication controller. The cases Mondis cites, such as *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1369-70 (Fed. Cir. 2010), are distinguishable. In *Revolution*, the claim language actually used the words "capable of," so that is why the court in that case only required the capability of performing the function of the limitation.[8] 563 F.3d at 1369.

In any event, although the Court holds that Mondis is incorrect in its interpretation of the law, Mondis has nevertheless provided sufficient evidence for a reasonable jury to find direct infringement for the Infringed Claims-at-Issue in this motion. Mondis provided sufficient evidence for a reasonable jury to conclude that there was actual practice of the functional limitations by the accused products—not merely that the accused products were "capable of"

---

[8] Likewise, in this case, for the claims that require only that the infringing product be "capable of" performing the functional limitation, *see, e.g.*, '180 Patent, claims 14 and 23, then it is sufficient for Mondis to merely prove the capability. InnoLux's JMOL motion does not take issue with claims 14 and 23 of the '180 Patent likely for this reason, and therefore, the Court holds that there was sufficient evidence for a reasonable jury to conclude that InnoLux's accused products infringe claims 14 and 23 of the '180 Patent. Indeed, aside from a blanket statement at the beginning of InnoLux's JMOL motion that all "Remaining Claims" deserve JMOL of non-infringement, InnoLux's JMOL motion never argues why or how the Court should grant JMOL of non-infringement with respect to claims 14 or 23 of the '180 Patent. (*See* Dkt. No. 622 & Dkt. No. 622, Ex. 1.)

performing those limitations. This case is like *Lucent Techns., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318-1320 (Fed. Cir. 2009), which reviewed the district court's denial of a JMOL of non-infringement. In *Lucent*, the plaintiff argued that the defendant "not only designed the accused products to practice the claimed invention, but also instructed its customers to use the accused products in an infringing way." *Id.* at 1318. The Federal Circuit noted that the jury in that case had "reviewed evidence relating to the extensive sales of Microsoft products and the dissemination of instruction manuals for the Microsoft products." *Id.* The Federal Circuit held that "the jury in the present case could have reasonably concluded that, sometime during the relevant time period from 2003 to 2006, more likely than not one person somewhere in the United States had performed the claimed method using the Microsoft products." *Id.* Likewise, in the present case, Mondis provided evidence of extensive sales of the accused products and that InnoLux provided instruction manuals that instructed how to use the products in the infringing manner. (*See, e.g.* 6/20 A.M. Tr., Dkt. No. 601, at 32; 6/20 P.M. Tr., Dkt. No. 602, at 84, 105-107, 124.) And although infringement is Mondis's burden to prove, unlike the defendant in *Lucent*, InnoLux never confronted Mondis's evidence of infringement and InnoLux never argued to the jury that no one actually performed the limitations in the accused products. Indeed, InnoLux never put up any defense to infringement during the trial. In light of the evidence above, a reasonable jury could have concluded that InnoLux infringed the Infringed Claims-at-Issue in this motion. As a result, the Court DENIES InnoLux's motion for JMOL of non-infringement. (Dkt. No. 622.)

    C.    *Mondis's Motion for JMOL that All Asserted Claims are Infringed (Dkt. No. 619.)*

The Court GRANTS Mondis's motion for JMOL that all asserted claims are infringed. (Dkt. No. 619.) This motion essentially pertains only to the following claims, which the jury

11

found were not infringed ("Non-Infringed Claims-at-Issue"):[9] claims 3 and 20 of the '090 Patent, claims 9 and 25 of the '088 Patent, and claim 18 of the '970 Patent.

As noted above, though Mondis has the burden to prove infringement by a preponderance of the evidence, at the trial, although InnoLux was not required to, InnoLux entered no evidence or made no argument to rebut Mondis's claims of infringement. In InnoLux's response to Mondis's JMOL of infringement, InnoLux only gives three reasons why this Court should not grant JMOL of infringement as to the claims the jury found not infringed. The Court rejects those three arguments for the following reasons.

First, InnoLux argues that Mondis does not have standing and this Court does not have jurisdiction over this motion for JMOL of infringement because Mondis admits that the Court's ruling on this motion will not ultimately affect the current litigation. While Mondis is not entirely correct that the Non-Infringed Claims-at-Issue will not affect this litigation, that is irrelevant. A party, such a Mondis, certainly has standing to bring a JMOL motion with respect to infringement claims it tried before a jury. And this Court certainly has jurisdiction to decide JMOL motions based on claims tried before a jury in this Court. Therefore, the Court rejects InnoLux's first argument.

Second, InnoLux argues that the jury's findings of non-infringement were proper because the jury found those claims also invalid, and an invalid claim cannot be infringed.[10] The Court

---

[9] For the claims that the jury found infringed, in the previous section of this Memorandum Opinion and Order, the Court has already determined that there was sufficient evidence for a jury to find infringement of those claims. The Court need not revisit those claims here.

[10] Mondis, on the other hand, argues that it believes the jury merely determined that certain claims were invalid, and therefore, also decided that they cannot be infringed. Mondis argues that is improper and that the Court should grant JMOL of infringement on that basis. Although Mondis's hypothesis is certainly plausible given that the same claims the jury found invalid the jury also found infringed, the argument is still speculative and therefore cannot be the legal basis for granting the JMOL of infringement.

disagrees. "Though an invalid claim cannot give rise to liability for infringement, whether it is infringed is an entirely separate question capable of determination without regard to its validity." *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1562, 1583 (Fed. Cir. 1983).

Third, InnoLux makes the same argument that it made in its motion for JMOL of non-infringement, that is, that Mondis failed to present evidence of direct infringement because Mondis did not show the functional limitations of certain claims were actually performed. As the Court stated in its discussion of that motion above, though the Court agrees with InnoLux's legal argument, the Court still finds that there was otherwise sufficient evidence for the jury to find that Mondis proved direct infringement by a preponderance of the evidence. Therefore, the Court again rejects this argument for the same reasons as it expressed above.

As a result, the Court has rejected every reason InnoLux has advanced for this Court to not grant JMOL of infringement of all claims. The Court holds that Mondis, in its case-in-chief, proved by a preponderance of the evidence that all the asserted claims were infringed by InnoLux's accused products. InnoLux provided no evidence to rebut Mondis's evidence. Therefore, the Court holds that there was not sufficient evidence for a reasonable jury to conclude that any of the claims were not infringed,[11] and the Court GRANTS Mondis's motion for JMOL to find all the asserted claims infringed.[12]

---

[11] InnoLux admits that if the Court rejects its three arguments that the Court has rejected above, then Innolux concedes, under certain conditions, that the accused products are covered by the claims in question. (Dkt. No. 633, at 1.)

[12] The Court understands that at first glance, the Court's reasoning regarding Mondis's motion for JMOL that all asserted claims are infringed may seem inconsistent with the Court's reasoning regarding InnoLux's motion for JMOL that all claims are invalid. A closer look, however, shows that due to the parties' arguments and positions in these motions, this Court's reasoning is not inconsistent at all. To illustrate a few differences, for example, the burden of proof for invalidity and infringement is different. Additionally, InnoLux never rebutted Mondis's infringement case, but Mondis strongly rebutted InnoLux's invalidity case. Finally, aside from InnoLux's three arguments that the Court has rejected above, InnoLux, in responding to

D. *Mondis's Motion for JMOL or a New Trial With Respect to Claim 25 of the '088 Patent (Dkt. No. 623.)*[13]

The Court GRANTS-in-part and DENIES-in-part Mondis's motion for JMOL or a new trial with respect to claim 25 of the '088 Patent. (Dkt. No. 623.) The majority of this motion is redundant with the JMOL motions discussed above. In accordance with Mondis's motion for JMOL of infringement of all claims, which was discussed in the section above, the Court GRANTS Mondis's request for JMOL that claim 25 of the '088 Patent is infringed by InnoLux's accused products. The Court DENIES Mondis's motion for JMOL that claim 25 of the '088 Patent is valid because there was legally sufficient evidence for a reasonable jury to find that claim invalid. Finally, even though the Court has granted Mondis's motion for JMOL that claim 25 of the '088 Patent is infringed, the Court DENIES Mondis's request for a new trial on the issues of willfulness and damages. Given that the jury has already determined damages based on infringement of the other claims, the damages would not be any different due to the infringement of additional claims. Mondis has provided no other basis for a new trial on damages. In addition, with respect to willfulness, because the Court is granting JMOL of no willful infringement, as will be discussed below, no new trial on willfulness is needed.

E. *InnoLux's Motion for JMOL of No Willful Infringement (Dkt. No. 621.)*

The Court GRANTS InnoLux's motion for JMOL of no willful infringement. Under the law of willful infringement, the Federal Circuit has set forth a two-pronged approach. First, a

---

Mondis's Motion for JMOL of Infringement, has essentially conceded infringement in certain circumstances. Mondis, on the other hand, did not concede invalidity under any circumstance.

[13] Mondis has taken issue with the white board drawing by Mr. Webb that InnoLux has reproduced (apparently from a photo taken at trial) in its brief. (Dkt. No. 634, at 2.) The Court notes that this drawing was not entered into evidence and was only a demonstrative. Although the testimony given by Mr. Webb in connection with that drawing is evidence, the drawing itself is not evidence. The Court also refused to allow InnoLux's expert, Dr. Rhyne, to give opinions in connection with the drawing itself because it was not in Dr. Rhyne's expert report.

patentee must make a showing of at least "objective recklessness." *In re Seagate Tech. LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). This first prong requires "clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* "The state of mind of the accused infringer is not relevant to this objective inquiry." *Id.* If the patentee can show objective recklessness, then the patentee must also prove the second prong by showing that the objectively-defined risk "was either known or so obvious that it should have been known to the accused infringer." *Id.* While the Federal Circuit did not set forth further guidance in *Seagate* for applying this test, it did indicate that the objectively-defined risk should be determined by the record developed in the infringement proceeding. *Id.*

As an initial matter, though the Court has granted Mondis's motion for JMOL that all claims are infringed, the Court has also determined that there was sufficient evidence for a reasonable jury to determine that the following claims were invalid (consistent with the jury's findings of invalidity): claims 3 and 20 of the '090 Patent, claims 9 and 25 of the '088 Patent, and claim 18 of the '970 Patent. Furthermore, though invalidity is not relevant to a determination of infringement, due to the "objective recklessness" prong of the willfulness test, invalidity is relevant to a determination of *willful* infringement. And this Court holds, as a matter of law, that an invalid claim cannot be willfully infringed because a party cannot be objectively reckless in infringing an invalid claim. As a result, the Court GRANTS JMOL of no willful infringement of claims 3 and 20 of the '090 Patent, claims 9 and 25 of the '088 Patent, and claim 18 of the '970 Patent.[14]

---

[14] The Court observes that in its briefing, Mondis has objected to InnoLux arguing (or this Court holding) that, *based on the jury's verdict of invalidity*, certain claims cannot be willfully infringed. Mondis argues that the jury's findings are not legally relevant in a motion for JMOL. But the Court's holding of no willful infringement of the claims in this motion is not based on

The remaining issues are whether the Court should render JMOL of no willful infringement with respect to claim 15 of the '090 Patent, claim 15 of the '342 Patent, and claims 14 and 23 of the '180 Patent. For the following reasons, the Court holds that there was not sufficient evidence for a reasonable jury to find that InnoLux acted with objective recklessness with respect to those claims. The primary reason for this holding is that a reasonable jury could not have found that the objective prong of the willfulness test was satisfied for these claims because there is no evidence InnoLux had pre-suit notice of these claims.

To illustrate InnoLux's lack of notice, it must first be understood that Mondis was not alleging post-suit willfulness, as Mondis stated at the pre-trial hearing. (*See* Pre-Trial Hearing Transcript, Dkt. No. 532, 29:35-30:12.) Mondis further stated that it would only be relying on "pre-suit notice and conduct." (*Id.* at 532:3-4.) The context of these statements is also important to note. When making those statements, Mondis was arguing why InnoLux should not be able to admit evidence regarding certain reexamination proceedings because they were not relevant to the objective prong of willfulness due to them occurring after this case was filed. (*Id.* at 28-29.)

Keeping that in mind, the Court considers these four claims. Claim 15 of the '090 Patent was not issued until July 20, 2010 when an Ex Parte Reexamination Certificate was issued that added new claims 5-26 to the '090 Patent, which was after this lawsuit was filed. And because Plaintiff is only alleging pre-suit willfulness, InnoLux could not have been objectively reckless with respect to claim 15 of the '090 Patent because that claim did not issue until after this lawsuit was filed. With respect to the '342 Patent and the '180 Patent, those patents were not issued until August 8, 2006 and January 6, 2009 respectively. In the parties' joint final pre-trial order, it was an "uncontested fact" that InnoLux received notice of the '342 Patent on May 7, 2008 and

---

the jury's findings of invalidity; rather, it is based on the *sufficient evidence* to support the jury's findings of invalidity.

the '180 Patent on January 15, 2009, and both dates are after this lawsuit was filed. Therefore, because Plaintiff is only alleging pre-suit willfulness, InnoLux could not have been objectively reckless with respect to the claims at issue in the '342 Patent and the '180 Patent because InnoLux did not receive notice of these patents until after the case was filed.[15]

In addition, the Court observes that the jury found for InnoLux on the licensing issue and also found that almost half the claims were invalid. As discussed in this Memorandum Opinion and Order, the Court has determined that there was legally sufficient evidence to support these findings by the jury. Although it may not be sufficient by itself to support a finding of no willful infringement, this shows that InnoLux had legitimate positions and defenses, and therefore, in combination with InnoLux's lack of notice mentioned above, the Court finds that there was not sufficient evidence for a reasonable jury to find willful infringement of claim 15 of the '090 Patent, claim 15 of the '342 Patent, and claims 14 and 23 of the '180 Patent.

Before concluding, however, the Court briefly addresses Mondis's waiver argument in its response brief. (Dkt. No. 637, at 10.) The Court agrees with Mondis that InnoLux waived any right to challenge the scope of the willfulness findings the jury *was asked to make*.[16] InnoLux never made any objection to the Court, before jury deliberations, with respect to the Court submitting the question of willful infringement to the jury. Further, as a point of procedural

---

[15] The Court recognizes that Mondis is arguing that the Court should consider "conduct that straddled both the pre- and post-suit periods." (Dkt. No. 637, at 1.) The Court understands Mondis's argument, but that does not change the fact that InnoLux did not have notice of these claims until after this lawsuit was filed. Had the jury found all the claims InnoLux asserted to be valid and infringed (and the Court found this was supported by sufficient evidence), InnoLux might have been "objectively reckless" with respect to certain claims in the '090 Patent family that were presented to Mr. Chang in 2005. But of the claims (which were issued at the time) that were presented to Mr. Chang in 2005, none were found by the jury to be valid (and sufficient evidence supports the jury's findings).

[16] That is, although InnoLux did not waive the right to challenge the jury's findings with respect to willful infringement, InnoLux did waive the right to challenge the fact that the issue of willful infringement was submitted to the jury.

17

clarification, as discussed above, InnoLux did preserve its record by approaching the Court with its intent to file Rule 50(a) JMOLs before the case was submitted to the jury. The Court allowed the parties to file their JMOLs in writing several weeks later. At that point, however, the parties were aware of the jury's findings, so it was only practical for the parties to take into account the jury's verdict in their JMOL briefs (i.e., there was no need for InnoLux to argue for JMOL of no willful infringement on the claims the jury found to not be willfully infringed). In reality, therefore, the parties' JMOL motions are Rule 50(b) motions because a Rule 50(a) motion is technically made before the parties know the jury verdict. As a result, the Court's granting of the parties' JMOL motions, such as this JMOL motion, is post-verdict relief. In other words, the parties should not consider the Court granting this JMOL of no willful infringement as an indication that the Court would have granted the motion before jury deliberations.

  F.  *Mondis's Motion for JMOL or a New Trial With Respect to HP-Hitachi License (Dkt. No. 618.)*

The jury determined that InnoLux proved by a preponderance of the evidence that products sold to the Hewlett-Packard Company ("HP") were covered under HP's license agreement with Hitachi ("HP License"). (*See* Verdict Form, Dkt. No. 586, at 4.) Mondis filed a motion for JMOL that the accused products sold to HP are not covered by the HP License or alternatively a motion for new trial. (Dkt. No. 618.) The dispute between the parties is whether there was sufficient evidence for the jury to find that the exceptions in the HP License under Sections 2.05(a) and 2.05(c) do not apply in this case. (*See* HP License, DX1096.) Given the testimony by HP (through its corporate representative Clement Lo) and Mr. Donaldson, the Court holds that there was a legally sufficient evidentiary basis for a reasonable jury to find that

InnoLux's products it sold to HP were covered under the HP License. As a result, the Court DENIES both requests.

## V. CONCLUSION

In conclusion, the Court DENIES InnoLux's motion for JMOL of invalidity (Dkt. No. 620), DENIES InnoLux's motion for JMOL of non-infringement (Dkt. No. 622), GRANTS Mondis's motion for JMOL that all asserted claims are infringed (Dkt. No. 619), GRANTS-in-part and DENIES-in-part Mondis's motion for JMOL or a new trial with respect to claim 25 of the '088 Patent (Dkt. No. 623), GRANTS InnoLux's motion for JMOL of no willful infringement, and DENIES Mondis's motion for JMOL or a new trial with respect to the HP-Hitachi license agreement (Dkt. No. 618).

It is so ORDERED.

SIGNED this 29th day of August, 2011.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE